**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| STEVEN D. WILDS, CHERIE A. HOLBROOK, and HENRY A. MOORE, individually and as a representative of a Class of Participants and Beneficiaries of Patrick Industries, Inc. Group Life and Health Plan,<br><br>Plaintiffs**,**<br><br>v.<br><br>Patrick Industries, Inc.,<br><br>Defendant. | Case No.: 3:26-cv-582 |

## CLASS ACTION COMPLAINT

Steve D. Wilds, Cherie A. Holbrook, and Henry A. Moore, ("Plaintiffs") bring this Class Action Complaint against Patrick Industries, Inc. ("Patrick" or "Defendant"), individually and on behalf of a Class of Participants and Beneficiaries of the Patrick Industries, Inc. Group Life and Health Plan ("Patrick Health Plan" or "Plan"). Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters.

## NATURE OF ACTION

1.      Patrick Industries, Inc. ("Patrick") designs, manufactures, and distributes component products and building materials used primarily in recreational vehicles, marine craft, manufactured housing, and industrial markets.

2.      For Patrick employees to maintain health insurance coverage under the Patrick Health Plan, they must declare during an annual benefit period whether they use tobacco products.

1

3.      Those Patrick employees who do use tobacco products are required to pay an additional fee ("tobacco surcharge") of $16.35 per week ($850 per year) through the end of 2026 Plan year. The surcharge is per participant and beneficiary, so if both the employee and spouse indicate they are tobacco users, the surcharge would be $32.60 per week ($1700 per year) through the end of 2026 Plan year.

4.      Tobacco surcharges have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act of 1974 ("ERISA"), the Public Health Service Act ("PHSA"), and the implementing regulations.

5.      This case challenges Patrick's imposition of a tobacco-use health insurance surcharge through an employee wellness program that failed to comply with federal law incorporated into ERISA. Patrick charged employees an additional weekly premium unless they satisfied tobacco-related conditions, while informing participants that the surcharge would be removed only "[o]nce you quit." Patrick failed to provide or adequately disclose a lawful reasonable alternative standard, misled participants regarding how to avoid the surcharge, and caused participants to pay hundreds of dollars annually in unlawful premium surcharges.

6.      Patrick's tobacco surcharge program therefore fails to comply with the terms of ERISA and the PHSA and their implementing regulations. Therefore, Patrick is unable to take advantage of the statutes' safe harbor, 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B), and these tobacco surcharges are discriminatory, health-based surcharges in violation of the law and in violation of its ERISA fiduciary duties to Patrick Health Plan's participants and beneficiaries.

7.      More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health- status-related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program." 29 U.S.C. § 1182(b)(1); 42

2

U.S.C. § 300gg-4(b)(1).

8.    To qualify as a *bona fide* wellness program under ERISA, a company must offer a "reasonable alternative standard" (for example, a smoking cessation program), by which a participant can receive the program's "full reward;" that is, avoid the surcharge for the entire plan year (not just prospectively once the smoking cessation program has been completed or only if the employee or spouse actually quits smoking). 29 C.F.R. § 2590.702(f).

9.    Additionally, to be a bona fide wellness program, a company must also provide notice that such a reasonable alternative exists for tobacco users in every Plan communication discussing the premium differential, including contact information, and a statement that the recommendations of participants' physicians will be accommodated.

10.   At present and over the last six (6) or more years, any Patrick Health Plan participant that completed the alternative program would not be eligible to avoid the surcharge for that Plan year unless they also quit using tobacco products, a fact that was made clear in the Company's plan documents providing general information and notice on the tobacco surcharge to Plan participants. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Patrick was and remains unlawful.

11.   At present, and over the last six (6) or more years, the Patrick Health Plan, failed to include the proper notice in all Plan materials discussing the surcharge, including the physician-accommodation statement. Several of Patrick's participant-facing materials describe the tobacco surcharge and the increased premium contributions imposed on participants, but do not provide compliant notice of all the avenues by which participants can avoid the surcharge, including the physician-accommodation statement, as expressly required by 45 C.F.R. § 146.121(f)(4)(v). This is not a minor technical failure; it is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as

3

non-tobacco-users.

12.     Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same once the reasonable alternative standard has been satisfied. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

13.     Because Defendant failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's safe harbor, the tobacco surcharge violates ERISA's anti-discrimination requirements, and its collection by Patrick was, and remains, unlawful.

14.     Plaintiffs are employees of Patrick who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plans. This surcharge imposed an additional financial burden on Plaintiffs, and in some cases their spouses, and continues to impose such a burden on those similarly situated.

15.     Plaintiffs bring this lawsuit individually and on behalf of a Class of Participants and Beneficiaries of the Patrick Health Plans, seeking to have these unlawful tobacco surcharges returned, and for plan-wide relief under 29 U.S.C. § 1109 (ERISA § 409) and 29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)), as well as appropriate, equitable relief under 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)).

16.     Under 29 U.S.C. § 1109, Patrick is a fiduciary of the Patrick Health Plan who has a legal obligation to act in the best interests of, and prudently form the Plans' participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plans as a whole, seek

appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Patrick's ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

17.    Plaintiff Steven D. Wilds is a resident of the State of Michigan.  Plaintiff Wilds is currently employed with Patrick.

18.    Since at least 2021, Plaintiff Wilds has been a tobacco user. Plaintiff Wilds received health insurance through Patrick during his employment and declared himself to be a tobacco user during open benefits enrollment each year of his employment at Patrick. Plaintiff Wilds was required, as a user of tobacco, to pay the illegal tobacco surcharge every week of his employment with Patrick to maintain his health insurance coverage. During his five years of employment at Patrick, Plaintiff Wilds has paid approximately $4,250.00 in unlawful tobacco surcharges.

19.    Plaintiff Wilds did not know that through the availability of a tobacco cessation program that he had the ability to receive a reimbursement of those tobacco surcharges once he completed the cessation program.

20.    Plaintiff Cherie A. Holbrook is a resident of the State of Michigan.  Plaintiff Holbrook is currently employed with Patrick.

21.    Since at least 2001, Plaintiff Holbrook has been a tobacco user. Plaintiff Holbrook received health insurance through Patrick during her employment and declared herself to be a tobacco user during open benefits enrollment each year of her employment at Patrick. Plaintiff Holbrook was required, as a user of tobacco, to pay the illegal tobacco surcharge every week of her employment with Patrick to maintain her health insurance coverage. During the last six years of employment at Patrick, Plaintiff Holbrook has paid approximately $5,100.00 in unlawful tobacco surcharges either for herself and/or on behalf of her husband.

22.    Plaintiff Holbrook did not know that through the availability of a tobacco cessation

program that she had the ability to receive a reimbursement of those tobacco surcharges once she completed the cessation program.

23.     Plaintiff Henry A. Moore is a resident of the State of Indiana. Plaintiff Moore is currently employed with Patrick.

24.     Since at least 2020, Plaintiff Moore has been a tobacco user. Plaintiff Moore received health insurance through Patrick during his employment and declared himself to be a tobacco user during open benefits enrollment each year of his employment at Patrick. Plaintiff Moore was required, as a user of tobacco, to pay the illegal tobacco surcharge every week of his employment with Patrick to maintain his health insurance coverage. During his five years of employment at Patrick, Plaintiff Moore has paid approximately $4,250.00 in unlawful tobacco surcharges.

25.     Plaintiff Moore did not know that through the availability of a tobacco cessation program that he had the ability to receive a reimbursement of those tobacco surcharges once he completed the cessation program.

26.     Plaintiffs are, and were throughout the relevant Class Period (April 20, 2020, to the time of judgment), participants in the Patrick Health Plan pursuant to 29 U.S.C. § 1002(7).

27.     Defendant Patrick is headquartered at 107 West Franklin Street, Elkhart, Indiana 46515, and has approximately 10,000 employees in the United States, including in Indiana. In this Complaint, "Patrick" refers to the named Defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

28.     At all times relevant to this lawsuit, Patrick operated the Patrick Health Plan, which was available to Patrick employees and their dependents.

29.     The Patrick Health Plan is an employee welfare benefit plans subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

6

30.    None of the Plaintiffs learned about the tobacco surcharges or the legal deficiencies with Patrick's tobacco surcharge program until shortly before filing this lawsuit.

<u>**JURISDICTION AND VENUE**</u>

31.    This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

32.    This Court has personal jurisdiction over Defendant because it transacts business in this District, resides in this District, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

33.    Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some of the violations of ERISA occurred in this District and Defendant resides and may be found in this District.

<u>**BACKGROUND**</u>

**A.    ERISA's Prohibition on Premium Discrimination and the Narrow Wellness Program Exception.**

34.    As a baseline rule, ERISA and the PHSA prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

35.    The statute permits group health plans to "establish[] premium discounts or rebates

. . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

36.    Under ERISA § 505, 29 U.S.C. § 1135, Congress instructed the Departments of Labor, Health and Human Services, and Treasury (the "Departments") to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182 and PHSA § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[] necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

37.    In 2006, the Departments issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "Final Regulations"). Congress incorporated those regulations into the PHSA in 2010 and, therefore, the Departments published the Final Regulations to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159; *see also* 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). These Final Regulations were approved and signed in 2013 to be effective January 1, 2014. Final Regulations, 33158.

38.    The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed

requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.

39.    Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***[T]hese [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

40.    Only by satisfying all of the criteria, can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* As one court concluded, in a tobacco surcharge case, regarding an employer's obligation to satisfy the regulatory criteria, "[a]ll means all … no matter how small the requirement may be." *Chirinian v. Travelers Companies, Inc.*, No. 24-CV-3956 (LMP/DTS), 2025 WL 2147271, at *11 (D. Minn. July 29, 2025).

41.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet ***all*** of the following five (5) criteria:

(a) <u>Frequency of opportunity to qualify</u>: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) <u>Size of reward</u>: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) <u>Reasonable design</u>: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) <u>Uniform availability and reasonable alternative standards</u>: "The ***full reward*** under the outcome-based wellness program must be available to ***all similarly situated individuals.***" 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis added).

(e) <u>Notice Requirement</u>: "The plan must disclose ***in all plan materials*** describing the terms of the program ***the availability of other means of qualifying for the [full] reward***." Final Regulations, 33159 (emphasis added).

42.    ERISA permits outcome-based tobacco wellness programs only if similarly situated participants are offered a reasonable alternative standard, and federal regulations make clear that completion of a cessation program—not actual success in quitting—is the lawful alternative.

43.    For health-contingent wellness programs, the statute and Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 42 U.S.C. §

300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4) (emphasis added). Plans that describe surcharges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The notice requirement states:

> **Notice of availability of reasonable alternative standard**. The plan or issuer *must* disclose *in all plan materials* describing the terms of an activity-only wellness program the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard *and a statement that recommendations of an individual's personal physician will be accommodated*. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphases added).

44.    The Departments explained that while materials that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice, including omitting contact information and a statement that a participant's physician's recommendations will be accommodated, violate this rule.

45.    These requirements exist precisely to prevent employers from including these disclosures in some plan materials but then excluding that information from materials that are actually sent to participants. Employers that include misleading and varying notices, and omit the

required disclosures altogether from most plan communications run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

46.     Defendant's tobacco surcharge violates these provisions. Plaintiffs and all others similarly situated were required to pay an additional premium or contribution per year based on a "health status-related factor" — their use of tobacco products. Plaintiffs, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

47.     When employees enroll as newly eligible employees or during a subsequent annual enrollment period in the Patrick Health Plan, he or she needs to declare as a non-tobacco user/tobacco user status for themselves and for their covered spouse.

48.     Specifically, Defendant imposes an unlawful tobacco surcharge on employees and their beneficiaries (*e.g.*, spouses/domestic partners) who are enrolled in the Plan.

49.     Under "Tobacco-Free Wellness Program" in the 2025 Team Member Benefits Guide, Patrick states: "Remember, *quitting tobacco products can save you $850 each year* on your medical premiums. *Once you quit,* log into the Alight Patrick Benefits Portal and remove the weekly tobacco surcharge of $16.35." (emphasis added).

50.     Under the ERISA wellness regulations, a tobacco-use surcharge can be structured as an outcome-based wellness program, but participants who cannot meet the outcome must be offered a reasonable alternative standard. For tobacco programs, regulators have specifically indicated that plans generally may require participation in a cessation program, but not actual success in quitting as the sole route to avoid the surcharge. 29 C.F.R. § 2590.702(f).

51.     Patrick's wording suggests that the surcharge remains until the employee has actually quit; employee can only self-remove surcharge only after quitting; no mention in the quoted language that completing a cessation course itself removes the surcharge; and no clear disclosure

that a reasonable alternative standard is available to all similarly situated individuals that otherwise provides the "full reward" for those who complete the tobacco cessation program.

52.     Patrick's tobacco surcharge program is an unlawful success-based requirement rather than a lawful participation-based alternative. The Benefits Guide informed employees that the tobacco surcharge would remain in place unless and until they actually quit using tobacco. It did not clearly disclose that completion of a cessation program, regardless of outcome, entitled participants to avoid the surcharge prospectively and receive the full reward.

53.     Patrick told employees that the surcharge would be removed only "once you quit," not once they completed a lawful alternative standard. That distinction is the difference between a compliant wellness program and an unlawful premium penalty.

54.     During this period, Defendant controlled the tobacco surcharge, including determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. Rather than placing these funds in a trust account, Defendant retained the amounts collected as part of its own assets.

55.     The Plan offered by Defendant requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

## ALLEGATIONS

I.     **DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.**

A.     **Lack of Reasonable Alternative Standard.**

56.     Defendant failed to provide a compliant wellness program for tobacco-using participants. As discussed above, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard. In this case, being tobacco-free.

57.    The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like tobacco cessation programs. Additionally, employees must receive the *full reward* once they meet the alternative standard even if they do not stop using tobacco proudcts. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program.

58.    Defendant's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, or that it provide notice of a reasonable and alternative standard. As a result, it cannot meet the elements of this affirmative defense.

59.    While Patrick offers a tobacco cessation program as part of its wellness initiative, the Plan materials do not sufficiently explain the process by which employees and their spouses can avoid or remove the surcharge retroactively, and in fact, unlawfully require the employees and their spouses to quit using tobacco products prior to having any part of the surcharge removed.

60.    Even if Patrick employees or spouses "remove" their surcharge after they quit smoking, the use of the word "remove" suggests that they are not eligible for the "full reward" in receiving retroactively all surcharges already paid for that Plan year as required. This practice violates ERISA's requirements that participants receive the "full reward" after satisfying the alternative standard.

61.    Defendant, during the applicable limitations period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. Defendant withholds the amount of the surcharge from participants' paychecks and deposits these funds into its own accounts, rather than into a trust account.

62.    By depositing these ill-gotten gains into its own accounts, Defendant has dealt with assets of the Plan for its own interests, in violation of ERISA. Defendant has a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health

insurance. Instead, by charging and collecting this unlawful surcharge, Defendant has increased its own bottom line allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

63.     Because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year or by just completing the cessation program — Defendant's wellness program fails to provide reasonable alternative standards and fails to comply with the requirement to make available the "full reward" to participants.

64.     In other words, even though Defendant offers a tobacco cessation program, employees and spouses who complete that program, can only avoid the surcharge if they quit smoking and the only on a go-forward basis. They are not eligible for retroactive reimbursement for surcharges already paid during the Plan year. On these bases, the Plan violates ERISA's anti-discrimination provisions.

**B.     <u>Lack of Notice of Reasonable Alternative Standard.</u>**

65.     Additionally, ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all Plan materials to avoid the tobacco surcharge.

66.     Defendant's Plan materials fail to adequately communicate this option or only provides partial notice by specifying that only quitting tobacco use can avoid the surcharge only prospectively, in violation of ERISA's notification requirements.

67.     Defendant's failure to adequately disclose this information in all Plan materials deprives employees and their spouses of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on participants who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

68.     Plaintiffs did not complete the tobacco cessation program in part because they

believed that had to quit smoking.

69.    Alternatively, the did not complete the tobacco cessation program because they were not adequately notified of the program.

70.    Even if Plaintiffs had received the necessary compliant notifications of the reasonable alternative standard (which they did not), they would have not received the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require, but could only "remove" the tobacco surcharge once they quit smoking.

71.    The regulations require plans and issuers to "disclose *in all plan materials* describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), *including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated*." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E).

72.    Defendant does not include adequate notification in *all* Plan materials. While the Benefits Guide contains references to materials describing the tobacco cessation program in its Team Member Benefits Guides, they fail to notify participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year by just completing the program, in violation of ERISA, and do not mention that the reasonable alternative standard can be met through a personal physician accommodation.

73.    As alleged above, Plan materials do not inform employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year. Instead, employees are led to believe that the surcharge can only be avoided prospectively and only by quitting smoking, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

74.    Additionally, to be deemed a lawful wellness program, the regulations provide sample notification language. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

75.    Much of this language, including the ability to "earn the same reward by different means" and the fact that the PATRICK Plan will "work with you . . . [and] with your doctor," is missing from the Patrick Health Plan's materials distributed to the Plan's participants.

76.    "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg.  33158-01, 33166.

77.    None of the Plan documents provided to Plaintiffs in a written form, or digitally on the computer, disclose a means by which a participant could either receive the "full reward" for the tobacco surcharge for the entire Plan year by completing a tobacco cessation program, or a manner to prove a recommendations from an individual's personal physician regarding how their tobacco use may be accommodated.

78.    As a result, all of the Patrick Health Plan materials, as required by the wellness plan safe-harbor, do not provide the required notice of the scope and nature of the tobacco surcharge program available to Patrick employees and spouses.

79.    Because Patrick has not complied with the requirement that it provide notice of the availability and scope of the reasonable alternative standard in *all of the Plan's communications* by which a Plan participant could avoid the tobacco surcharge (including through a recommendation by a personal physician) and receive a full reward without having to quit smoking, Patrick's tobacco

surcharge program is unlawful and the surcharge assessed to the Plaintiffs and Class must be returned to them for the entire Class Period.

## CLASS ACTION ALLEGATIONS

80.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

81.    29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

82.    In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Patrick Health Plan who were subject to the unlawful Patrick tobacco surcharge. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All persons in the United States who paid Patrick Health Plan's tobacco surcharge in connection with the Patrick Industries, Inc. Group Life and Health Plan, at any time from six years prior to the filing of the Complaint to the entry of Final Judgment.

83.    Excluded from the Class are the Court and its officers, employees and relatives; Patrick and its subsidiaries, officers, directors, and the Plans' fiduciaries; and governmental entities.

84.    The Class includes at least thousands of members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

85.    There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendant owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plan and as to any individual participant. Common questions of law and fact include but are not limited to the following:

> a.    Whether Patrick's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

18

b.      Whether Patrick's tobacco surcharge program qualifies for statutory  safe harbor  protection  as  a  compliant  wellness program;

c.      Whether  Patrick  can  meet  every  element  of  its  statutory affirmative defense  for  operating  a  compliant  wellness  program;

d.      Whether  all  of  Patrick Plan  materials  describing the tobacco  surcharge gave notice of a reasonable alternative standard by which a plan participant may  receive  the  full reward; and

e.      Whether Patrick, in its discretionary fiduciary capacity of managing the Patrick Plan, breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge.

86.     Plaintiffs' claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by Patrick – its collection of an unlawful tobacco surcharge – and are based on the same legal theories.

87.     Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they are all participants in the Plan during the Class period, have no interest that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

88.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these statutory violations and breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

89.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

90.     Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

91.     Plaintiffs' claims arise from statutory violations and/or fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

92.     The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

93.     Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

94.     Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

95.     Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Patrick Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit.

96.     Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Reasonable Alternative Standard**

97.    Plaintiffs restate the above allegations as if fully set forth herein.

98.    To enroll in the Patrick Health Plan, Plaintiffs, class members, and their spouses/domestic partners were required to pay a tobacco surcharge in the amount of $850 per Plan year.

99.    Patrick's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

   a.   The Patrick Plan did not allow participants an alternative means to avoid the tobacco surcharge by enrolling in a compliant tobacco cessation program;

   b.   Even a tobacco user who enrolled in the smoking cessation program would still have the surcharge deducted from their pay only going forward and only if they actually quit smoking;

   c.   A participant who completed the alternative standard during a given plan year would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a $850 reduction per year in premium costs to maintain medical coverage; and

   d.   Because a participant could not receive the "full reward," and required a participant to quit smoking, the plan did not provide for a reasonable alternative standard and.

100.    Patrick cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

101.    Patrick's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

102.    29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

21

103.    Plaintiffs and class members were required to pay an illegal fee, and Patrick collected that fee from them in violation of the law. Equity requires that those funds be returned.

104.    Equity also requires that the Patrick Health Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**SECOND CLAIM FOR RELIEF**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice**

105.    Plaintiffs restate the above allegations as if fully set forth herein.

106.    To enroll in the Patrick Health Plan, Plaintiffs and Class members were required to pay a tobacco surcharge in the amount of $850 per year.

107.    Patrick's tobacco surcharge program is not and was not a permissible wellness program, because Patrick did not give the statutorily-required notice on the scope and nature of the reasonable alternative standard.

108.    Patrick's participant-facing materials discussing the surcharge under the Plan do not include the required disclosures, including a statement that recommendations of an individual's personal physician would be accommodated in determining a reasonable alternative standard.

109.    Further, none of the non-SPD plan documents provided to Plaintiffs or Class members, in a written form or digitally, provided a means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year without quitting smoking and all of the non-SPD participant-facing documents omitted the physician-accommodation statement.

110.    Because Patrick had core, participant-facing documents describing the program and the premium differential, without including these mandatory disclosures, the tobacco surcharge program fails to satisfy the notice requirements necessary to qualify for ERISA's safe-harbor protection. Patrick is therefore not entitled to statutory safe harbor protection.

111.    Patrick's tobacco surcharge has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and it is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

112.    29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3). ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Patrick's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Patrick cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiffs and Class Members are entitled to relief under ERISA § 502(a)(3).

113.    Plaintiffs and Class members were required to pay an illegal surcharge, and Patrick collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiffs and Class members.

114.    Equity also requires that the Patrick Health Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**THIRD CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty**

115.    Plaintiffs restates the above allegations as if fully set forth herein.

116.    At all times relevant to this lawsuit, Patrick was the administrator of the Patrick Health Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of

29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and discretionary control respecting management of the Patrick Health Plan and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Medical Plan.

117.   Instead of loyally and prudently acting in the best interests of the participants, Patrick chose to use the Plans' assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plans.

118.   Paystubs confirm that these surcharges were collected as before-tax deductions, alongside other required premium contributions, and thus were assets of the Plan from the moment of collection. Defendant breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce its own costs.

119.   The Plan should have received three funding streams: (1) employee premium contributions, (2) Patrick's contribution amount, and (3) the surcharge itself. But Defendant used the surcharge amounts to displace its own contributions. Upon information and belief, Patrick further profited by retaining those amounts in its own accounts, earning a float, and failing to remit the full employer contribution owed to the Plans.

120.   Defendant controlled and disseminated to all employees benefit guides and other communications related to the Plan discussing the premium differential but failed to notify them of all the ways by which they could avoid the entire year of surcharges.

121.   Patrick failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though

24

it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

122.    Patrick breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

123.    As a result of the unlawful surcharges, Patrick enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Patrick secured financial savings for itself while participants and the Plan bore increased costs. The structure of the programs ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year unless they quit smoking, and Defendant's communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

124.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant caused the Plan to engage in transactions that constituted a direct or indirect exchange of assets of the Plan for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Patrick is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the sponsor and fiduciary exercising discretionary authority over the Plan's assets.

125.    By retaining the amounts of the tobacco surcharges, Patrick increased its own corporate assets and saved the money it would otherwise have had to contribute to the Plan. In doing so, it dealt with assets of the Plan for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C.

§ 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, Patrick's contributions. By retaining and misusing the surcharges, Patrick benefitted from the float at the expense of the Plan and its participants, leaving the Plan with less than what they should have received under its governing documents.

126.    Defendant breached its fiduciary duties by: administering noncompliant Plan; failing to make available the "full reward" to all similarly situated participants; failing to disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and their participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, year after year, to ensure compliance with ERISA's requirements.

127.    These breaches caused Plaintiffs and the Class to incur unlawful surcharges that shifted costs to participants and away from Patrick. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior. More importantly, it would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

128.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

129.    Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

**FOURTH CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(3)**
**Breach of Duty of Loyalty**

130.    Plaintiffs restate the above allegations as if fully set forth herein.

131.    At all relevant times, Patrick was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

132.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

133.    Instead of loyally and prudently acting in the best interests of participants, Defendant chose to use assets of the Plan to exclusively benefit itself, to the detriment of Plaintiffs and other similarly situated individuals, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks. Year after year, Defendant administered noncompliant wellness programs. Defendant administered the Plan by exercising discretionary authority over how surcharge proceeds were handled, whether participants would receive the "full reward," whether they had to quit smoking, and by communicating with participants about their rights under the Plans.

134.    Defendant controlled and disseminated to all employees the benefit guides and other communications discussing the premium differential but failed to notify them of all the ways by which they could avoid the entire year of surcharges. Patrick failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications, to ensure

compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

135.    Patrick breached its fiduciary duties by administering Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

136.    As a result of the unlawful surcharges, Patrick enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Patrick secured financial savings for itself while participants bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year without quitting smoking, and Defendant's communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

137.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant engaged in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Patrick is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the sponsor and a fiduciary of the Plan exercising discretionary authority over the Plan's assets.

138.    By retaining the amounts of the tobacco surcharges, Patrick increased its own corporate assets.

28

139.    Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and their participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge programs, and the communications sent to participants, year after year, to ensure compliance with ERISA's requirements.

140.    These breaches caused Plaintiffs and the Class to incur unlawful surcharges that shifted costs to participants and away from Patrick. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior. More importantly, it would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

141.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

142.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs and the Class seek individual equitable relief necessary to redress Defendant's fiduciary breaches, including but not limited to restitution, surcharge, disgorgement, a constructive trust over improperly retained funds, and declaratory relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request the Court enter judgment, both individually and on behalf of all participants and beneficiaries in the Patrick Health Plan, and award the following relief:

a.  certifying a class action for Plaintiffs' ERISA claims and appointing the undersigned firms as Class counsel;

b.  requiring Patrick to reimburse all participants who paid the tobacco surcharges from April 30, 2020, through the present plus interest;

c.  requiring Patrick to revise any tobacco surcharge program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d.  enjoining Patrick from collecting tobacco surcharges until Patrick revises its tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e.  imposing a constructive trust on profits received by Patrick as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiffs and members of the Class can make claims for benefits;

f.  requiring Patrick to disgorge all unjust enrichment or profits received as a result of statutory violations or fiduciary breaches committed by it with regard to the tobacco surcharge program for which it is liable;

g.  ordering Patrick to provide all accountings necessary to determine the amounts Patrick must make good to the Patrick Health Plan and to Plan participants and beneficiaries;

h.  imposing the equitable remedy of surcharge and requiring Patrick to return all funds it derived from the illegal tobacco surcharge program to Plaintiffs and Class members;

i.  awarding Plaintiffs' counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action; and

j.  any further relief that the Court may deem just and equitable.

Dated:  April 30, 2026                     Respectfully submitted,

**HASSLER KONDRAS LLP**

/s/*Robert P. Kondras, Jr.*
Robert P. Kondras, Jr.
100 Cherry Street
Terre Haute, IN 47807
Telephone: 877-656-7602
Facsimile: 812-234-2881
kondras@hklawfirmllp.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda (*Pro Hac Vice Motion Pending*)
Wisconsin Bar No. 1074127
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
Email: psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*

31